HARDIN LAW OFFICE

Matthew D. Hardin · 101 Rainbow Drive · PMB 11506 · Livingston, TX 77399
Phone: (202) 802-1948 · Email: HardinLawPLLC@icloud.com

July 21, 2026

**VIA ELECTRONIC SUBMISSION AND EMAIL**

**Federal Bureau of Investigation**
Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602
FBI eFOIPA Portal: https://efoia.fbi.gov/

**U.S. Department of Justice**
Mail Referral Unit, Room 115
LOC Building
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

**Office of Information Policy**
U.S. Department of Justice
441 G Street, NW, Sixth Floor
Washington, DC 20530-0001
DOJ FOIA STAR Portal: https://www.justice.gov/oip/submit-and-track-request-or-appeal

Dear FOIA Officers:

**Re: Freedom of Information Act and Privacy Act Request of Manuel Ortiz; Request for Expedited Processing under 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(i), (iii)**

I represent Manuel Ortiz. Under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, I request the records described below. Enclosed are Mr. Ortiz's executed Certification of Identity, his authorization for release of records to counsel, and a copy of the available correspondence related to prior FOIA requests which may help you locate responsive records.

Each receiving component should search every office, records system, index, and repository reasonably likely to contain responsive records. This request is being submitted concurrently to the FBI, the Office of Information Policy (OIP), and the Mail Referral Unit for routing to all other components that may maintain responsive records. Each component should assign its own tracking number. Under 28 C.F.R. § 16.4(c), a component that determines another component maintains responsive records should route the request to that component and notify counsel.

## I. Background

In 1994, a jury returned first-degree murder verdicts against Mr. Ortiz. On direct review, the Louisiana Supreme Court affirmed the first-degree murder conviction and death sentence concerning Tracie Ortiz. It set aside the first-degree murder conviction and death sentence concerning Cheryl Mallory, modified that count to second-degree murder, and remanded for sentencing. In 2013, the Louisiana Supreme Court reinstated

Mr. Ortiz's death sentence after a district court had vacated it. Mr. Ortiz remains under that sentence at the Louisiana State Penitentiary at Angola.[1]

The FBI played a direct role in the investigation. FBI personnel put the Kenner Police Department in contact with Carlos Saavedra, a longtime FBI informant who became a central prosecution witness. FBI agents also supplied testimony that corroborated portions of Saavedra's account. Records concerning Saavedra's informant history, credibility, compensation, benefits, communications, prior statements, and relationship with federal agents bear directly on the reliability of a capital conviction and on the conduct of federal law-enforcement personnel.

In 1999, attorney Rana Dershowitz of Fried, Frank, Harris, Shriver & Jacobson submitted a request on Mr. Ortiz's behalf for DOJ and FBI records relating to the investigation. The enclosed correspondence provides concrete search leads for that request. This new request seeks the earlier request and processing files, the underlying responsive records, and a fresh determination under the law and facts that govern today.

## II. Records Requested

1. **Prior FOIA and Privacy Act requests.** All requests under FOIA or the Privacy Act submitted to DOJ or any DOJ component by Manuel Ortiz or by an identified person or entity acting on his behalf, including Rana Dershowitz and Fried, Frank, Harris, Shriver & Jacobson during calendar year 1999. This item includes the request reflected in the enclosed correspondence and any duplicate, referral, consultation, appeal, or component copy of that request.
2. **Processing and appeal records.** All records reflecting the receipt, routing, tracking, search, processing, referral, consultation, adjudication, or disposition of each request described in Item 1. This includes request logs and tracking records; copies of the incoming request and correspondence; search slips, search memoranda, and search instructions; records identifying custodians, files, systems, offices, and indices searched; processing notes and worksheets; exemption and withholding determinations and their stated justifications; internal correspondence and emails; referrals and consultations; fee records; response letters; administrative appeals; and records of appeal adjudication.
3. **Underlying responsive records, processed anew.** All records responsive to any request described in Item 1, including records previously released in full, released with redactions, withheld in full, referred, placed outside the request's scope, or left unprocessed. This item independently includes all DOJ and FBI records from January 1, 1991, through the date of the search concerning Manuel Ortiz; the investigation or prosecution arising from the killings of Tracie Williams Ortiz and Cheryl Mallory; Carlos Saavedra; Saavedra's work as a source, informant, cooperating individual, or witness; federal contacts with Kenner police, Jefferson Parish authorities, Louisiana authorities, or prosecutors concerning Ortiz or

[1] See *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So. 2d 922 (affirming the first-degree murder conviction and death sentence concerning Tracie Ortiz; setting aside the first-degree murder conviction and death sentence concerning Cheryl Mallory; modifying that count to second-degree murder; and remanding for sentencing); *State v. Ortiz*, 11-2799 (La. 1/29/13), 110 So. 3d 1029 (reinstating the death sentence), https://www.lasc.org/opinions/2013/11KP2799.pdf.

Saavedra; and the transmission, verification, corroboration, assessment, or use of information supplied by Saavedra.

4. **Records bearing on Saavedra's reliability and treatment.** Without limiting Item 3, all records concerning Saavedra's source or informant status; reliability assessments; suitability reviews; admonishments; deactivation or closing; criminal activity; prior inconsistent or false statements; payments, reimbursements, benefits, immigration assistance, charging consideration, or other things of value; promises or expectations; FBI 302s and source-reporting documents; communications with handling agents; and disclosures or communications to state investigators or prosecutors concerning any such matter.

The FBI should search the Central Records System and its automated and legacy indices, including main files, cross-references, and "see" references; records indexed under all known name variants and identifying information supplied with Form DOJ-361; New Orleans Field Office files; FBI Headquarters and RIDS records; electronic-surveillance and specialized indices where reasonably likely to contain responsive records; and retired, archived, transferred, or off-site records. OIP should search for administrative-appeal and consultation records. The Mail Referral Unit should use the enclosed 1999 correspondence to route this request to every additional DOJ component identified in the earlier processing history.

This request covers records in every format, including paper and electronic records, emails, memoranda, database entries, audio and video recordings, photographs, indices, and attachments. It includes records held in current systems and records preserved in legacy, archived, retired, transferred, or successor systems.

## III. This New Request Requires Fresh, *De Novo* Processing

This is a new request. FOIA requires the agencies to determine whether records responsive to this request are currently subject to disclosure. 5 U.S.C. § 552(a)(3)(A), (b). Releases and withholdings made in response to earlier requests under earlier law do not govern the disposition of this request. The FBI and every receiving component should therefore process the requested records *de novo*, apply current law and current facts, and make a fresh determination concerning every prior withholding or redaction.

**The foreseeable-harm requirement applies.** Under 5 U.S.C. § 552(a)(8)(A)(i), an agency may withhold information only when "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)" or disclosure is prohibited by law. It appears that any prior processing of Mr. Ortiz's FOIA request(s) occurred before Congress enacted this requirement in 2016. Current decisions must address the harm that disclosure would cause now, more than three decades after the underlying investigation. A component should not adopt a historical withholding without a current, record-specific assessment of foreseeable harm.

**The deliberative-process privilege's 25-year limit has run for the relevant period.** Exemption 5 provides that the deliberative-process privilege "shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). The relevant investigation occurred in 1992 and the trial concluded in 1994. The deliberative-process privilege is therefore unavailable for records from that period and for every other record created on or before July 21, 2001. Other Exemption 5 privileges remain subject to their own requirements, and the agency must

identify the particular privilege asserted. Factual and otherwise segregable material must be released.

**The privacy balance is materially different today.** More than thirty years have passed since the investigation and trial. Passage of time and confirmed death can substantially diminish relevant privacy interests, although death does not extinguish every individual or survivor interest. See *Schrecker v. DOJ*, 254 F.3d 162, 166-67 (D.C. Cir. 2001); *National Archives & Records Administration v. Favish*, 541 U.S. 157, 166-71 (2004). The public interest has grown because the records concern federal participation in a capital investigation, the FBI's use and evaluation of an informant who became a central prosecution witness, and the adequacy of the government's earlier FOIA processing. Those matters illuminate federal agency conduct, the public-interest focus required by *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772-73 (1989). The agencies should reassess each privacy redaction under current circumstances, distinguish the interests of living and deceased persons, and release all information that no longer meets the statutory withholding standards.

**Exemption 7(A) requires a concrete present basis.** The investigation and prosecution identified in this request concluded decades ago. Exemption 7(A) applies only when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Historical reliance on that exemption cannot establish present interference. If a component contends that a pending or reasonably anticipated enforcement proceeding supports withholding, it should identify the proceeding as specifically as the law permits, explain how disclosure of the particular category of records could cause interference, and release every reasonably segregable portion that presents no such risk.

## IV. Request for Expedited Processing

I request expedited processing under 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e). DOJ's regulation directs expedited processing when ordinary delay "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 28 C.F.R. § 16.5(e)(1)(i), or would cause "[t]he loss of substantial due process rights," 28 C.F.R. § 16.5(e)(1)(iii). Both grounds apply.

Louisiana has demonstrated that a long-dormant capital case can move to execution with extraordinary speed. On February 10, 2025, the Governor announced the State's nitrogen-hypoxia protocol. Courts issued execution warrants within days. Louisiana executed Jessie Hoffman on March 18, 2025, its first execution in fifteen years. State officials then pursued warrants in other capital cases, including premature warrants that courts recalled after counsel objected that state post-conviction review remained unfinished. State officials continued efforts during 2025 and 2026 to accelerate additional capital cases and obtain execution dates.[2]

---

[2] See Office of Governor Jeff Landry, *Promises Made, Promises Kept: Justice Coming for Crime Victims* (Feb. 10, 2025), https://gov.louisiana.gov/news/4762; Greg LaRose, *Louisiana Schedules Back-to-Back Executions for Next Month*, Louisiana Illuminator (Feb. 13, 2025), https://lailluminator.com/2025/02/13/louisiana-execution-3/; Greg LaRose, *Louisiana Conducts Its First Nitrogen Gas Execution, Ending 15-Year Death Penalty Hiatus*, Louisiana Illuminator (Mar. 18, 2025), https://lailluminator.com/2025/03/18/louisiana-execut/; Leah Roemer, *Premature*

Mr. Ortiz remains under a sentence of death in the same State. The requested records concern federal involvement in his capital investigation and a longtime FBI informant who became a central prosecution witness. Undersigned FOIA counsel needs the records to help Mr. Ortiz and his postconviction counsel investigate, preserve, and present claims in post-conviction and clemency proceedings while meaningful avenues for relief remain available. The records cannot serve that purpose if ordinary FOIA delay consumes the period in which counsel can investigate and use them. Louisiana's recent conduct shows that the interval between an execution warrant and an execution can be measured in weeks. A conventional processing period measured in months or years therefore creates a literal threat to Mr. Ortiz's life and a concrete risk that substantial due-process rights will be lost before responsive federal records can be used.

The requested expedition is also tailored to practical need. The FBI should first process the records concerning Saavedra, his informant relationship, his reliability, benefits or consideration, his communications with agents, and federal communications with state investigators or prosecutors. The agencies may process the broader historical FOIA-administration records immediately afterward. This prioritization permits the life- and due-process-related records to be reviewed without waiting for every administrative file.

**Certification.** I am counsel for Manuel Ortiz. Mr. Ortiz is under a sentence of death imposed by the State of Louisiana and is incarcerated at the Louisiana State Penitentiary at Angola. Louisiana has resumed executions, has adopted a protocol that permits executions by nitrogen hypoxia, and has demonstrated that it can move from execution protocol and warrant proceedings to an execution within weeks. The records requested here concern federal participation in Mr. Ortiz's capital investigation and a longtime FBI informant who became a central prosecution witness. Counsel needs the records promptly to investigate, preserve, and present claims for post-conviction and clemency relief. Ordinary processing delay could deprive Mr. Ortiz of a meaningful opportunity to use the records, pose an imminent threat to his life, and cause the loss of substantial due-process rights. I certify that these statements are true and correct to the best of my knowledge and belief.

A determination on expedited processing is due within ten calendar days. 5 U.S.C. § 552(a)(6)(E)(ii)(I); 28 C.F.R. § 16.5(e)(4). Please provide each component's determination separately.

### V. Fee Waiver and Requester Category

I request a waiver of all fees under 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k). Disclosure is likely to contribute significantly to public understanding of federal

---

*Execution Warrants in Louisiana Deny Death-Sentenced Prisoners Due Process and Fair Consideration of Constitutional Claims*, Death Penalty Information Center (Apr. 25, 2025), https://deathpenaltyinfo.org/premature-execution-warrants-in-louisiana-deny-death-sentenced-prisoners-due-process-and-fair-consideration-of-constitutional-claims; Leah Roemer, *Louisiana Supreme Court Unanimously Sides with Two Death-Sentenced Prisoners Targeted with Premature Execution Warrants*, Death Penalty Information Center (Feb. 17, 2026), https://deathpenaltyinfo.org/louisiana-supreme-court-unanimously-sides-with-two-death-sentenced-prisoners-targeted-with-premature-execution-warrants.

government operations. The records will show how the FBI developed, handled, assessed, and communicated information from a longtime informant in a capital investigation; what the FBI disclosed to state investigators and prosecutors; how DOJ and the FBI searched for and processed these records; and whether withholding decisions made decades ago remain supportable under current law. These subjects concern identifiable federal activities. The information is not otherwise readily available because the requested records reside in federal investigative and FOIA-processing files.

Mr. Ortiz's criminal postconviction counsel has substantial familiarity with the underlying prosecution, the procedural history, and the legal significance of source and informant records. That expertise will permit that counsel to analyze the records and explain their significance to a broader audience. Consistent with professional duties and Mr. Ortiz's interests, Mr. Ortiz and his counsel intend to disseminate nonexempt records and resulting analysis through public judicial filings when appropriate and to journalists, researchers, and nonprofit organizations concerned with federal investigative practices, informant reliability, FOIA administration, and capital punishment. The requested disclosure will therefore add materially to the information available to the public.

Neither Mr. Ortiz nor counsel has a commercial interest in disclosure. The request is made for legal, governmental-accountability, and public-education purposes. If a complete fee waiver is denied, please classify this as an "all other requesters" noncommercial request under 5 U.S.C. § 552(a)(4)(A)(ii)(III) and 28 C.F.R. § 16.10(c). I agree to pay properly chargeable fees up to $500. Please obtain written authorization before incurring any greater amount.

## VI. Format, Segregability, and Response

Please produce records in electronic form through the portal used for submission or to the email address from which the request is transmitted. Produce electronic records in their native format when doing so preserves metadata or improves usability; otherwise, searchable PDF is acceptable. See 5 U.S.C. § 552(a)(3)(B). Please make rolling releases, beginning with the prioritized Saavedra and investigative records identified above.

For every withholding, release all reasonably segregable nonexempt portions and identify the exemption invoked. 5 U.S.C. § 552(b). If records are denied in whole or in part, provide a reasonable estimate of the volume withheld, unless providing the estimate would itself harm an interest protected by an exemption, and provide the name and title or position of each person responsible for the denial. 5 U.S.C. § 552(a)(6)(C)(i), (F). Please also describe the offices, systems, and indices searched with enough detail to permit an informed administrative appeal.

Please communicate through the contact information associated with the electronic submission. If a component believes clarification would materially speed production, counsel is available to confer promptly. A request for clarification should preserve the original receipt date and the request for expedited processing to the extent provided by law. I look forward to the expedition determination within ten calendar days and the determination on the request within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i), (E)(ii)(I).

Respectfully submitted,

Matthew D. Hardin
Counsel for Manuel Ortiz